1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11   BRETT GARDNER,

12                                        Plaintiff,

13   v.

14   KENNETH J. BRAITHWAITE,
      Secretary, Department of the Navy,
15
16                                        Defendant.

Case No. 20-cv-2172-MMA (RBB)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

[Doc. No. 28]

17

18        Plaintiff Brett Gardner ("Plaintiff") brings this action against Defendant Carlos Del

19   Toro,[1] in his official capacity as the Secretary of the Department of the Navy,

20   ("Defendant") asserting (1) race, national origin, and/or ancestry discrimination; and

21   (2) retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

22   U.S.C. § 2000e, *et seq.  See* Doc. No. 1 ("Compl.").  Defendant moves for summary

23   judgment in its entirety.  *See* Doc. No. 28.  Plaintiff filed an opposition, to which

24   Defendant replied.  *See* Doc. Nos. 35, 36.  The Court found this matter suitable for

25   determination on the papers and without oral argument pursuant to Civil Local Rule

26

27

28   [1] Carlos Del Toro is now the Secretary of the U.S. Department of the Navy and is automatically
      substituted as a party pursuant to Fed. R. Civ. P. 25(d).

7.1.d.1.  *See* Doc. No. 32 at 2.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

# I. BACKGROUND[2]

The following facts are not reasonably in dispute.[3]  Plaintiff, a white, non-Hispanic male, initiated this action for (1) race, national origin, and/or ancestry discrimination, and (2) retaliation he allegedly experienced during his employment at Fleet Readiness Southwest ("FRCSW") in North Island, California.  Doc. No. 36-1 ("Defendant's Separate Statement of Undisputed Material Facts" or "DSS") at Nos. 1, 72.  Plaintiff's claims center on the decision not to promote him to a Supervisory Electronics Engineer, GS-14, position in July 2018.  DSS at Nos. 14, 38.

During the relevant period, Plaintiff worked as an Avionics Engineer, GS-13, at FRCSW.  DSS at No. 1.  As a Senior Avionics Engineer, Plaintiff was assigned to the F/A-18 Hornet Fleet Support Team.  DSS at No. 2.  Plaintiff also had a collateral duty on the Advanced Technology and Innovation ("ATI") Team, which he eventually took over as his primary role in 2016.  DSS at No. 1.  At the beginning of 2018, Plaintiff reported to Avionics Division Manager David Okano.  DSS at No. 3.  Plaintiff's second-line supervisor was Claudia Garcia, who was the Department Head of Avionics (Code 4.5) and Propulsion and Power (Code 4.4).  *Id.*  Plaintiff also reported to Chris Root on his

---

[2] These material facts are taken from Defendant's Separate Statement of Undisputed Material Facts and Plaintiff's responses thereto, *see* Doc. No. 36-1 at 1–83, Plaintiff's Statement of Undisputed Material Facts and Defendant's responses thereto, *see* Doc. No. 36-1 at 84–129, as well as the parties' supporting declarations and exhibits.

[3] In his response to Defendant's Separate Statement of Undisputed Material Facts, Plaintiff disputes many of Defendant's statements of fact.  *See* Doc. No. 35-4.  However, many of Plaintiff's explanations are largely irrelevant.  For example, in response to the statement "Ms. Garcia provided a Memorandum addressed to the [Advisory Panel] chairperson (David Okano), explaining the Advisory Panel's duties, and enclosing a sample Advisory Panel recommendation memorandum that lists the top three candidates in rank order, the applicable position description, and a checklist for advisory panel members[,]" Plaintiff states, "Undisputed that Garcia provided the memorandum.  Disputed that the memorandum comes anywhere close to immunizing the Defendant from liability."  DSS No. 20.  This is not a valid basis for disputing the fact.  To the extent Plaintiff purports to dispute a statement but does not provide a relevant basis for doing so, the Court treats the statement as undisputed.

1    ATI projects.  *Id.*

2          Garcia is the "champion" of the Navy's diversity action team called the Hispanic

3    Engagement Action Team ("HEAT").  DSS at No. 77.  There are several different

4    diversity action teams at FRCSW, including, for instance, groups that represent African

5    American employees, Asian Pacific employees, disabled individuals, and members of the

6    LGBTQ community.  DSS at No. 78.  Each diversity action team consists of several

7    employees, who appoint a senior leadership member to help promote, among other

8    things, the growth and development of employees, and to serve as the main point of

9    contact for leadership.  *Id.*

10          In July 2018, Plaintiff applied for a vacant Supervisory Electronics Engineer, GS-

11   14 position.  DSS at No. 14.  The selecting official for the position was Plaintiff's

12   supervisor, Claudia Garcia.  DSS at No. 3, 15.  Garcia appointed an Advisory Panel.  *Id.*

13   In general, the purpose of an Advisory Panel is to review the applicable position

14   description, review and score the applicants' resumes, conduct and score the interviews,

15   and provide the selecting official with the panel's recommendation based on the overall

16   scores of the candidates and documentation of their observed strengths and weaknesses.

17   DSS at No. 22.  Garcia designated David Okano as the chairperson of the Advisory Panel

18   for the vacant Supervisory Electronics Engineer, GS-14 position.  DSS at No. 16.  Okano

19   selected David Rolke and Daniel Shockley to be on the Advisory Panel with him.  *Id.*  At

20   the time, Rolke was a Supervisory Electronics Engineer, GS-15, at Fleet Readiness

21   Center Southeast, located in Jacksonville, Florida, and Shockley was a Test Program Set

22   Development Team Leader, GS-14, at FRCSW.  DSS at No. 17.  Okano identifies as

23   Asian, and Rolke and Shockley identify as white Caucasian.  DSS at No. 19.  Garcia is

24   Hispanic.  Doc. No. 36-1 at 111 ("Plaintiff's Separate Statement of Undisputed Material

25   Facts and Defendant's Response" or "PSS") at No. 37.

26          Garcia provided a Memorandum addressed to Okano explaining the Advisory

27   Panel's duties, and enclosing a sample Advisory Panel recommendation memorandum

28   that lists the top three candidates in rank order, the applicable position description, and a

checklist for the advisory panel members.  DSS at No. 22.  After the Advisory Panel reviewed and scored the resumes, they selected two candidates to proceed with interviews—Plaintiff and German Lopez, both of whom were GS-13 Engineers at the time.  DSS at No. 25.  Lopez is Hispanic.  PSS at No. 36.  On July 17, 2018, Garcia emailed Okano a draft of the interview questions.  DSS at No. 26.  In her email, she stated "[f]eel free to modify as necessary."  *Id.*  She also said he could change the order of the questions.  *Id.*

On the day of their interviews, Plaintiff and Lopez were provided four questions fifteen minutes before their interviews.  DSS at No. 32.  Both were given twenty minutes each to provide their interview responses to the Advisory Panel, including answering an additional question that was asked live during the interview.  *Id.*  After completing the interviews, the Advisory Panel tallied the resume and interview scores for both applicants.  DSS at No. 34.  Plaintiff received a score of 83.3 for his resume and 58.8 for his interview, with a total score of 142.1.  Lopez received a score of 71.9 for his resume and 85.0 for his interview, with a total score of 156.9.  *Id.*

On July 19, 2018, the Advisory Panel provided a Memorandum to Garcia, recommending the top two candidates, with German Lopez listed in first place and Plaintiff in second place.  DSS at No. 35.  All three panelists signed the recommendation form.  *Id.*  Garcia ultimately selected Lopez for the Supervisory Electronics Engineer, GS-14, position.  DSS at No. 38.  Upon being contacted by Plaintiff for feedback, Okano and Shockley told Plaintiff that Lopez scored higher on the interview question about the Code 4.5 national strategies and initiatives and on the blind question.  DSS at No. 40.

On August 7, 2018, Plaintiff initiated contact with an EEO counselor, alleging he had been discriminated against based on race and ethnicity when he was not selected for the Supervisory Electronics Engineer, GS-14, position.  DSS at No. 58.

On August 17, 2018, Garcia, through her administrative assistant, sent an email to relevant employees regarding the restructuring of the Avionics leadership team.  DSS at No. 41.  Lopez was assigned to supervise the F/A-18 team, and Okano was moved to the

E-2/C-2 team.  *Id.*  Garcia also reassigned Plaintiff under her supervision, along with two other employees who previously did not report directly to Garcia, John Manry and German Lopez.  DSS at No. 43.

On August 28, 2018, EEO Counselor Joseph Becker emailed Garcia.  *Id.*  The subject line of the email was "ADR."  *Id.*  On August 28, 2018, Plaintiff sent an email to Donald McClenny, and carbon copied Garcia and other employees, stating that he was "engaging my 4.5 avionics and 4.4 [power and propulsion] national leads . . ."  DSS at No. 44.  On August 29, 2018, Garcia responded to Plaintiff's email, stating that Plaintiff needed to talk to her before contacting the 4.4 and 4.5 national leads, and stating "halt your actions to move this forward until we meet."  DSS at No. 45.  On August 30, 2018, Garcia sent a follow-up email to Plaintiff, stating that she would like more coordination and communication so that she is not left out of the loop, and that being copied on emails after the fact is not sufficient.  DSS at No. 46.  On September 7, 2018, Garcia emailed Chris Root, stating that she met with Plaintiff that day and told Plaintiff that she would like to stop all new 4.4 and 4.5 ATI initiatives that are being considered by the ATI Team.  DSS at No. 47.

On November 13, 2018, Plaintiff filed his formal EEO Complaint.  DSS at No. 67. In his EEO complaint, Plaintiff alleged that he was subject to discrimination based on his race when he was not promoted and that Plaintiff had been subject to reprisal based on his EEO activity.  *See* Doc. No. 28-3 ("Formal EEO Complaint of Discrimination") Ex. 3.

Plaintiff never spoke to Ms. Garcia about his EEO claim.  DSS at No. 66.  Plaintiff withdrew his EEO hearing request before the final decision and brought the instant civil action on November 5, 2020.  DSS at Nos. 70–72.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the "outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *See Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Further, in assessing a party's motion for summary judgment, a "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3) (a district court "need only consider only the cited materials"); *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.

1988) (district courts are "not required to comb the record to find some reason to deny a motion for summary judgment"). Rather, it is the obligation of each party to cite to "particular parts of materials in the record" or otherwise show that "the materials cited do not establish the absence or presence of a genuine dispute" in their briefing. Fed. R. Civ. P. 56(c)(1). However, "[a]s a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1022 (9th Cir. 2012).

### III. DISCUSSION

Plaintiff claims that he was subjected to disparate treatment by Garcia on the basis of his "race, national origin, and/or ancestry discrimination" when he was not selected for a Supervisory Electronics Engineer, GS-0885-14 position.[4] *See* Compl. ¶¶ 5, 9, 12. Additionally, Plaintiff alleges that he was retaliated against by Garcia for initiating and filing an EEO complaint against her. *Id.* ¶ 16. Defendant movies for summary judgment in its entirety. *See* Doc. No. 28. Accordingly, the Court addresses each of Plaintiff's claims in turn.

### A. Discrimination Under Title VII for Non-Selection

Title VII is the exclusive remedy for claims of employment discrimination by federal employees. *See Brown v. GSA*, 425 U.S. 820, 829–35 (1976); *Taylor v. Geithner*, 703 F.3d 328, 333 (9th Cir. 2013). Title VII prohibits consideration of "race, color, religion, sex, or national origin in employment practices," thereby establishing protected classes. 42 U.S.C. § 2000e-2(m). Discrimination in the form of disparate treatment occurs when, predicated upon a particular trait, an employee receives treatment less

---

[4] In his Complaint, Plaintiff alleges that he was discriminated against because of his "race, national origin, and/or ancestry discrimination." Compl. ¶ 22. However, during his sworn deposition, Plaintiff testified that his discrimination claim is based solely on him being white and non-Hispanic. *See* Doc. No. 28-3 ("Plt. Depo.") Ex. 1 at 180:22–25, 181:8–16. Moreover, the parties' summary judgment filings only address race and not national origin or ancestry discrimination. The Court therefore analyzes Plaintiff's Title VII discrimination claim based solely on race.

favorable than other employees.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).  In relevant part, Title VII's disparate treatment provision provides: "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).

Under the *McDonnell Douglas* framework,[5] "a plaintiff alleging disparate treatment under Title VII must first establish a *prima facie* case of discrimination." *Chuang v. University of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "To establish a *prima facie* case, plaintiffs must offer evidence that gives rise to an inference of unlawful discrimination," which they may do with

> circumstantial evidence by showing: (1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

*Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (citations, internal quotation marks, and brackets omitted).  "At the summary judgment stage, the requisite

---

[5] "For a *prima facie* case of race discrimination and retaliation under Title VII, Plaintiff "must offer evidence that 'gives rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004).  Here, Plaintiff has not produced "direct or circumstantial evidence of discriminatory intent demonstrating that a discriminatory reason more likely than not motivated the employer." *See Metoyer v. Chassman,* 504 F.3d 919 (9th Cir. 2009) (citation omitted).  Moreover, Plaintiff appears to accede to the *McDonnell Douglas* framework given that his opposition largely focuses on the issue of pretext.  *See generally* Doc. No. 35. Accordingly, the Court assesses Plaintiff's claims under the burden-shifting framework set forth in *McDonnell Douglas.  Cf. McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004).

degree of proof necessary to establish a *prima facie* case is minimal . . . ." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citation and quotation marks omitted).  If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to produce evidence that Plaintiff "was rejected, or someone else was preferred for a legitimate, nondiscriminatory reason." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  If Defendant meets this burden, Plaintiff must show that the articulated reason is pretextual "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at 1123–24 (quoting *Texas Dep't of Community Affairs*, 450 U.S. at 256).

　　　1.　*Plaintiff's* Prima Facie *Case of Discrimination*

　　　In the instant case, Defendant does not appear to dispute that Plaintiff pleads a *prima facie* case of discrimination under Title VII: Plaintiff belongs to a protected class; he was qualified for the position; he was rejected for the position; and Defendant filled the position with another employee who was outside of Plaintiff's protected class.  *See* Doc. No. 28 at 10.  Instead, Defendant urges that "the Navy had legitimate, non-discriminatory reasons for the non-selection." Doc. No. 28 at 10.  Plaintiff, in turn, urges that "numerous factors show that Garcia's explanation for selecting" Lopez instead of Plaintiff is "a pretext for discrimination." Doc. No. 35 at 9.  The Court concludes that Plaintiff has stated a *prima face* case of discrimination under Title VII, and therefore focuses its analysis on the latter parts of the *McDonnell Douglas* framework— Defendant's proffered explanation for its non-selection of Plaintiff, and Plaintiff's proffered proof of pretext.

　　　2.　*Defendant's Evidence of a Legitimate, Non-Discriminatory Reason for Plaintiff's Non-Selection*

　　　As evidence of a legitimate, non-discriminatory reason for the non-selection of Plaintiff, Defendant urges that it "followed an established, objective, and documented procedure for evaluating the applicants[,]" *see* Doc. No. 28 at 10 (citing DSS at No. 15),

and that Plaintiff's combined score of both his resume and interview was lower than Lopez's, *see id.* at 12–13 (citing DSS at Nos. 34–37, 40). Specifically, Defendant points to its procedures for scoring resumes and conducting and scoring interviews, and Okano and Shockley's explanation that Lopez "demonstrated a better knowledge and understanding of Code 4.5 national strategies and initiatives during the interview, as well as a better demonstration of a competency manager's responsibilities" than Plaintiff. *See* Doc. No. 28 at 11–14 (citing DSS at No. 40). The Court concludes Defendant has met its burden to put forth evidence of a legitimate, nondiscriminatory reason for Plaintiff's non-selection. *See, e.g.*, *Sorrell v. Wilkie*, No. 17-cv-1573 DMS (NLS), 2018 U.S. Dist. LEXIS 212122, at *14 (S.D. Cal. Dec. 14, 2018) ("Defendant has advanced a legitimate and nondiscriminatory reason for Plaintiff's non-selection. Plaintiff's scores based on her written application, interview, and writing exercises were lower than those who were hired."); *Wilborn v. Ashcroft*, 222 F. Supp. 2d 1192, 1198 (S.D. Cal. 2002) (concluding that an employer proffered a legitimate, nondiscriminatory reason for not promoting the employee plaintiff where another applicant possessed more supervisory experience and had superior interview skills).

### 3.   *Plaintiff's Evidence of Pretext*

Having decided that Defendant has met its burden regarding a legitimate, non-discriminatory explanation for its decision, in order to survive summary judgment, Plaintiff must provide evidence that Defendant's proffered nondiscriminatory reason is merely a pretext for discrimination. *Chuang*, 225 F.3d at 1123–24. Plaintiff may meet this burden of showing pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dep't of Community Affairs*, 450 U.S. at 256).

"Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221

(9th Cir. 1998)) (citations and internal quotations omitted) (alteration in original). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.* (citations omitted).

Despite Plaintiff's argument to the contrary, he presents no direct evidence of pretext. *See id*. Plaintiff has not cited any evidence of "clearly . . . racist [ ] or similarly discriminatory statements or actions by Defendant." *See id*. Instead, he proffers circumstantial evidence of pretext.

> Circumstantial evidence, in contrast [to direct evidence], is evidence that requires an additional inferential step to demonstrate discrimination. It can take two forms. First, the plaintiff can make an affirmative case that the employer is biased. . . . Second, the plaintiff can make his case negatively, by showing that the employer's proffered explanation for the adverse action is "unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

*Coghlan*, 413 F.3d at 1095. When evidence of pretext is circumstantial, rather than direct, the plaintiff must come forward with "'specific' and 'substantial' facts to create a triable issue" of fact as to discrimination. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

As circumstantial evidence of pretext, Plaintiff points to the destruction of the selection panel's interview notes, Shockley's statement under deposition that he did not feel free to change the interview questions provided by Garcia, the fact that both Garcia and Lopez identify as Hispanic, and the fact that Garcia was the HEAT champion. *See* Doc. No. 35 at 12–24; *see also* PSS at No. 28, 30, 31, 37, 39, 40; Doc. 35-1 ("Shockley Depo.") Ex. 5 at 19:12–23:16, 27:11–18.[6] Plaintiff also contends that Defendant's

---

[6] Defendant argues that evidence regarding the promotional selection process is "immaterial" because the "quality of the selection process, separate from any racial discrimination, is not at issue." *See, e.g.*, PSS at No. 1. To be sure, Plaintiff brings only two claims in the instant case—discrimination for non-selection and retaliation—pursuant to Title VII. *See* Compl. However, for reasons discussed in Section III.B, this evidence is relevant to Plaintiff's claims.

proffered explanation is pretextual as there is "evidence of pretext in the form of written statements by a Federal Government program (HEAT) which Garcia has developed and for which she is the top leader at FRCSW." Doc. No. 35 at 4. According to Plaintiff, "the stated purpose [of] the HEAT program is to get Hispanics promoted at FRCSW." *Id.* As support, Plaintiff points to the depositions of Becker and Shockley. *See id.* at 16 (citing PSS at No. 41, 44, 45). Becker testified as follows regarding HEAT's purpose:

> A: Yeah, so like with all the other groups, they hold events and they discuss diversity in the workplace, being treated fairly. They would put together like, they're called brown bags where the group would get together and they would go ahead and educate each other on writing resumes and share advice on how to go ahead and move up in the community.
>
> Q. How to move up –
>
> A. Or to – correct.
>
> Q. To get promoted.
>
> A. Yes. To get – to get promoted.

*See* Doc. No. 28-3 ("Becker Depo.") Ex. 36 at 11:11–12:6. As to Shockley, he stated the following regarding HEAT: "I believe it's like other minority groups that help push minorities into job promotions, or help them in their career" and that "part of" what HEAT does is "assisting [minorities] to get promoted." Shockley Depo. at 10:11–24. The HEAT pamphlet Plaintiff proffers states that the "Mission Statement" of HEAT is as follows: "Established to enable career advancement of Hispanics by identifying, addressing, and overcoming barriers to employment, development and retention." Doc. No. 35-1 ("HEAT Pamphlet") Ex. 8. at 169, 172.

Mindful of the Ninth Circuit's ruling that "it should not take much for plaintiff in a discrimination case to overcome a summary judgment motion[,]" *Nigro v. Sears, Robuck & Co.*, 784 F.3d 495, 499 (9th Cir. 2015) (citations omitted), the Court concludes that Plaintiff has met his burden to produce evidence sufficient to raise a genuine issue of

1  material fact as to pretext and overcome summary judgment on the discrimination claim.

2  Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to

3  Plaintiff's discrimination claim.

4  **B.   Retaliation Under Title VII**

5  Retaliation against persons who assert rights under Title VII is prohibited.  42

6  U.S.C. § 2000e-3(a).  In relevant part, Title VII states "[i]t shall be an unlawful

7  employment practice for an employer to discriminate against any of his employees or

8  applicants for employment . . . because he has made a charge, testified, assisted, or

9  participated in any manner in an investigation, proceeding, or hearing under this title[.]"

10 *Id.*

11 The *McDonnell Douglas* framework also applies to Plaintiff's Title VII retaliation

12 claim.  *Surrell v. California Water Serv., Co.*, 518 F.3d 1097, 1105–06 (9th Cir. 2008).[7]

13 To establish a *prima facie* case of retaliatory conduct, Plaintiff must show that: (1) he

14 engaged in a protected activity; (2) he suffered an adverse employment action; and

15 (3) there is a causal connection between the protected activity and the adverse

16 employment action.  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008)

17 (citation omitted).  If the *prima facie* case is established, the burden shifts to the

18 defendant to set forth a legitimate, non-retaliatory reason for its actions, after which the

19 plaintiff must produce evidence to show that the stated reasons were a pretext for

20 retaliation.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *McGinest v. GTE*

21 *Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).

22 An individual engages in protected activity under Title VII when the individual has

23 a "reasonable belief" that the employment practice being opposed is prohibited under

24 Title VII.  *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).  "[A]n

25 adverse employment action is adverse treatment that is reasonably likely to deter

26

27

28 [7] *See supra* fn.5.

employees from engaging in protected activity." *Ray*, 217 F.3d at 1237. "Title VII retaliation claims may be brought against a much broader range of employer conduct than substantive claims of discrimination." *See Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)). A causal connection "can be inferred from circumstantial evidence such as [a defendant's] knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

### 1. Newly Raised Allegations of Retaliatory Conduct

As an initial matter, the Court considers Defendant's argument that Plaintiff failed to properly exhaust four of his allegations of retaliatory conduct. *See* Doc. No. 28 at 24–25. The four allegations identified by Defendant are as follows: (1) in December 2019, Plaintiff heard there was a rumor that he was drunk at the 2017 Maintenance Symposium; (2) management refused to sign off on Plaintiff's disability paperwork related to a workplace injury from December 2019; (3) in 2020, management delayed Plaintiff's ability to work on projects for the Naval Enterprise Sustainment Technology Team ("NESTT"); and (4) in August 2020, management denied Plaintiff's request to telework during the Covid-19 pandemic. *See id.* at 25–26.

Retaliation claims are discrete claims that must be timely filed. *See AMTRAK v. Morgan*, 536 U.S. 101, 113–14 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. "In order to bring a Title VII claim in district court, a plaintiff must first exhaust [his] administrative remedies." *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001) (citing 42 U.S.C. § 2000e—16(c)). Exhaustion of administrative remedies requires that the plaintiff "file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge." *Lyons*, 307 F.3d at 1104 (citing 42 U.S.C. § 2000e-5(b)). Specifically, the plaintiff "must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter" and "initiate contact with a Counselor within 45 days of the date of the matter

alleged to be discriminatory." *Id.* at 1104 (citing 29 C.F.R. § 1614.105(a)).  29 C.F.R. § 1614.103(a) defines retaliation complaints as "complaints of discrimination" for purposes of contacting an EEO counselor.

> Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite. The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation. The specific claims made in district court ordinarily must be presented to the EEOC. However, the district court has jurisdiction over any charges of discrimination that are "like or reasonably related to" the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations.

*Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (citations omitted) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)).  Charges filed before the EEO are to be construed liberally due to "[t]he remedial purpose of Title VII and the paucity of legal training among those whom it is designed to protect." *Stache v. Int'l Union of Bricklayers & Allied Craftsmen*, 852 F.2d 1231, 1233 (9th Cir. 1975).  "In determining whether the exhaustion requirement has been satisfied, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632 (9th Cir. 2002) (internal citations omitted).  "The crucial element of a charge of discrimination is the factual statement contained therein." *Id.*

Here, Plaintiff first initiated contact with an EEO counselor on August 7, 2018 "alleging he had been discriminated against based on race and ethnicity when he was not selected for the Supervisory Electronics Engineer, GS-14, position." DSS at No. 58. Plaintiff filed his formal EEO complaint on November 13, 2018 alleging discrimination and reprisal. *See* DSS at No. 67.  During his deposition, Plaintiff testified regarding four additional allegations of retaliation that he states occurred between December 2019 and

September 2020.  DSS at No. 84.  Plaintiff did not contact an EEO counselor within 45 days of the date of any of the four 2019–2020 events.  DSS at No. 85.  The four newly raised, allegedly retaliatory actions therefore occurred over a year after Plaintiff initiated an informal EEO complaint and filed his formal EEO complaint.  Additionally, Plaintiff was no longer in Garcia's chain of command during any of these four events.  DSS at No. 53.  Moreover, Plaintiff fails to proffer any evidence of surrounding circumstances that tend to show a retaliatory motive as to these allegations.  The Court therefore concludes that these four new retaliation allegations are not "like or reasonably related" to the allegations contained in the EEO complaint "or within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations."  *See Leong*, 347 F.3d at 1122.

Accordingly, the Court concludes that Plaintiff failed to timely exhaust his administrative remedies with respect to the four 2019 and 2020 retaliation allegations.  *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019); *see also Hollins v. Wilkie*, No. 19-cv-2201 DMS (JLB), 2021 U.S. Dist. LEXIS 90816, at *7 (S.D. Cal. May 12, 2021) (dismissing Title VII claims "that were not raised with an EEO counselor within 45 days of their occurrence, but were instead raised for the first time when Plaintiff sought to amend his EEO complaint" for failure to exhaust administrative remedies); *Poole v. Garland*, No. 20-cv-09379-PJH, 2022 U.S. Dist. LEXIS 47808, at *17 (N.D. Cal. Mar. 17, 2022) (dismissing Title VII claims due to lack of administrative exhaustion where the "adverse actions described by plaintiff" were not "specifically tethered to the activities described in the administrative complaint").

2.   *Other Retaliatory Conduct*

The Court turns to Plaintiff's other allegations of retaliatory conduct.  In his Complaint, Plaintiff identifies three instances of allegedly retaliatory conduct:

(1) "[Ms. Garcia] required Plaintiff to report to her directly even though as a GS-13 he should have remained under the supervision of a GS-14 as is customary. She had no other GS-13s under her direct supervision, and she did it to

intim[id]ate him and send a message to other employees under her management not to complain about discrimination."  Compl. ¶ 16.

(2)  "Ms. Garcia also instructed Plaintiff not to communicate with anyone outside of his code, which made his job nearly impossible to perform."  *Id.*

(3)  "Furthermore, Ms. Garcia instructed Plaintiff not to forward emails that detailed disagreement up the chain."  *Id.*

Defendant concedes that "Plaintiff's EEO complaint constitutes protected legal activity" but challenges the "adverse employment action" and "causation" elements of Plaintiff's *prima facie* case, as well as Plaintiff's arguments regarding pretext.   Doc. No. 28 at 19.  The Court addresses each retaliation allegation individually.

        a.   <u>Restructuring</u>

Defendant argues that Garcia's restructuring does not constitute an adverse employment action.  *See* Doc. No. 28 at 19–20.  Specifically, Defendant argues that "[t]he allegedly retaliatory comments and actions toward Plaintiff were personnel actions and/or workplace disputes unrelated to any protected criterion, which simply do not constitute harassment or retaliation as a matter of law."  *Id.* at 19–20.

In a Title VII retaliation case, "[a]n action is an adverse employment action if a reasonable employee would have found the action materially adverse, which means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination[.]"  Ninth Circuit Civil Jury Instructions, 10.10 (*citing Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).  Whether an action is materially adverse is judged by an objective standard accounting for the particular circumstances under which the action occurred.  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.  In the Title VII retaliation context, to be materially adverse, an action need not rise to the level of an ultimate employment action, such as discharge, change in job title, or reduction in pay.  *See Ray*, 217 F.3d at 1242–43.  Examples of adverse employment actions include "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion."  *Brooks v. City of San Mateo*,

229 F.3d 917, 928 (9th Cir. 2000).

By way of Garcia's restructuring, Plaintiff was placed directly under Garcia's supervision.  DSS at No. 43.  The Court cannot conclude that this would not "dissuade a reasonable worker from making or supporting a charge of discrimination."  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57; *see also Brooks*, 229 F.3d at 929 (stating that "[t]ransfers of job duties . . . if proven, would constitute adverse employment decisions cognizable under Title VII") (citation and internal quotations omitted); *St. John v. Employment Development Dep't*, 642 F.2d 273, 274 (9th Cir. 1981) (affirming a district court's conclusion that a transfer to another job of the same pay and status may constitute an adverse employment action).

Defendant also argues that "there is no causal link between [Plaintiff's] informal EEO contact on August 7, 2018 and any alleged adverse employment action."  Doc. No. 28 at 19–21.  Specifically, Defendant urges that "the alleged adverse employment actions occurred *before* Ms. Garcia learned of Plaintiff's EEO claim."  *Id.* at 21.  The parties dispute when Garcia became aware of Plaintiff's EEO activity.  *See* DSS at Nos. 58–62.  It is undisputed that Becker sent an email with the subject line "ADR" to Garcia on August 28, 2018.  *See* DSS at No. 59.  Defendant contends that Garcia did not learn of Plaintiff's EEO complaint until Brian Frank notified her on September 11, 2018.  *See* DSS at No. 62.  However, Garcia testified that she does not recall the specific date she learned of Plaintiff's EEO complaint.  Doc. No. 28-3 ("Garcia Depo.") Ex. 29 at 118:13–119:20.  Plaintiff asserts that Garcia learned of the EEO activity earlier.  *See* Doc. No. 35 at 24–25; DSS at No. 59; PSS at No. 53.  There is some evidence that Garcia may have learned of Plaintiff's intention to file an EEO complaint shortly after the July 27, 2018 selection.  *See* Doc. No. 35-1 at 152–53, 164; *see also Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017) (quoting *Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982)).  Given the dispute, and that the evidence must be viewed in Plaintiff's favor, when Garcia was put on notice of Plaintiff's EEO activity is a determination best left to a jury.

Turning to the latter portions of the *McDonnell Douglas* framework, as evidence of a legitimate, nondiscriminatory reason for the challenged action, Defendant urges that it had "legitimate business reasons for each employment action it took against Plaintiff." *See* Doc. No. 28 at 18, 23.  More specifically, Defendant states that the restructuring was done "[t]o improve the supervisor-to-employee ratio[.]"  *Id.* at 22 (citing DSS at No. 9–10).  As support, Defendant points to unrebutted evidence of the supervisor to employee distribution within Plaintiff's code, Okano's "previously raised [ ] concern with [ ] Garcia that he was overseeing a large number of GS-13 employees, while the other Supervisory Electronics Engineer at the Time (Francisco Rios) did not have the same number of employees reporting to him[,]" the fact that two other employees were moved under Garcia's command along with Plaintiff, and multiple other instances of GS-13 employees reporting directly to a GS-15 supervisor.  *See id.* at 22–23 (citing Doc. No. 28-3 ("Frank Depo."), Ex. 35 at 18:19–19:8; Doc. No. 28-3 ("Jarvis Depo.") Ex. 34 at 16:15–17:2, 43:12–44:2, 71:3–10; DSS at No. 10, 42–43)).  The Court concludes that Defendant provides a legitimate, nondiscriminatory explanation for the restructuring.

Finally, as evidence of pretext, Plaintiff proffers the following in support of his retaliation allegations:[8]

(1) "Defendant disingenuously contends that it is not unusual for a GS-13 to be under the direct supervision of a GS-15 in the organization" in light of Jarvis's testimony that "in the previous five years[,] he had known of only two GS-13's under the direct supervision of a GS-15" and those GS-13s were "supervisors themselves."  Doc. No. 35 at 26 (citing PSS at No. 59–60).

(2) "[P]rior to Plaintiff raising an EEO complaint with Harmon . . . Garcia promised Plaintiff that he would be placed under the direct supervision of the GS-14 replacement for Rios or stay under Okano."  *Id.* at 27.

---

[8] Plaintiff does not specify which retaliation allegation each of these facts purportedly supports.  *See* Doc. No. 35 at 28.

(3) Garcia "greatly reduc[ed] his ATI responsibilities [and] stripp[ed] him of public use of his high-status ATI designation, embar[r]assing him in front of his peers, and many more other [sic] action." *Id.* at 27 (citing PSS at No. 65).

Additionally, in his declaration, Plaintiff asserts that "Garcia told me that after the selection process was over, I would be assigned to work under whomever got the GS-14 position or continue under my then supervisor [ ] Okano.  She did not tell me that I would be working under her."  Doc. No. 35-2 ("Plt. Decl.") ¶ 6.  But this does not undermine Defendant's evidence and explanation that the restructuring was not exclusive to Plaintiff, but instead was part of a larger effort to balance the supervisor-to-employee ratio within Garcia's chain of command.  Moreover, in an unrebutted email proffered by Defendant, which details the conversation between Plaintiff and Garcia regarding who would be Plaintiff's future supervisor, Plaintiff himself states, "Perhaps now in hindsight, a better policy may have been to have me report directly to you concerning the ATI projects."  Doc. No. 28-3, Ex. 9 at 225.  The Court therefore concludes that Plaintiff has not produced sufficient evidence that supports his assertion that Defendant's neutral justifications for this action were pretextual.  *See Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (concluding that a plaintiff failed to raise a triable issue of fact as to retaliation where the defendant employer "had ample basis" for its action and where Plaintiff "present[ed] no evidence contradicting" Defendant's explanation "other than [Plaintiff's] unsubstantiated statement").

      b.    <u>Instructions Regarding Communication Outside of Code and New Advanced Technology Initiatives</u>

Defendant argues that Garcia's instructions to Plaintiff not to communicate with anyone outside of his code and to "stop working on new 4.4 and 4.5 advanced technology initiatives" are not adverse employment actions.  *See* Doc. No. 28 at 23–24.  The Court disagrees.  Coupled with Plaintiff's factual assertion in his

declaration that discussion of "certain matters" outside of FRCSW "had always
been part of [Plaintiff's] ATI duties[,]" *see* Plt. Decl. ¶ 9, and Plaintiff's factual
allegations that Garcia "reduc[ed] his ATI responsibilities" and "stripp[ed] him of
public use of his high-status ATI designation," *see* Doc. No. 35 at 27 (citing PSS at
No. 65), the Court concludes that these instructions could each "dissuade a
reasonable worker from making or supporting a charge of discrimination." *See
Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57; *see also St. John v. Employment
Development Dep't*, 642 F.2d 273, 274 (9th Cir. 1981) (concluding that even a
transfer to another job of the same pay and status may constitute an adverse
employment action in the Title VII retaliation context).  As to the causation
element of retaliation, the same analysis applied *supra* Section III.B.2.a applies.
The Court therefore concludes that Plaintiff has stated a *prima facie* case of
retaliation regarding these actions.

However, Defendant provides legitimate, nondiscriminatory explanations for
Garcia's instructions.  Defendant states that "Garcia's instruction to Plaintiff not to
communicate with others outside of the Command resulted from instances wherein
management believed Plaintiff had overstepped his authority or otherwise
responded in an unprofessional manner." *See* Doc. No. 28 at 23.  As support,
Defendant points to an email Plaintiff sent to Donald McClenny, copying Garcia
and other employees, and subsequent emails between Garcia and Plaintiff in which
Garcia "state[d] that she would like more coordination and communication so that
she is not left out of the loop." *See id.* (citing DSS at Nos. 44–46).  Additionally,
Defendant provides evidence that "Garcia's instruction that Plaintiff stop working
on new 4.4 and 4.5 advanced technology initiatives was due to the limited staffing
in her departments, which Plaintiff acknowledged during his deposition[,]"  that
"[t]here were already four ATI projects in the pipeline, and [ ] Garcia explained to
Plaintiff that her departments did not have the resources to support additional
projects at that time[,]" and that "Garcia contacted Chris Root to ensure that

Plaintiff had enough work given the reduction in ATI-related projects for her departments."  Doc. No. 28 at 24 (citing DSS at No. 47, 48, 51).

Plaintiff does not point to any evidence that undermines these explanations.  The Court therefore concludes that Plaintiff has not produced sufficient evidence supporting his assertion that Defendant's neutral justifications for Garcia's instructions were pretextual.  *See Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

### c.   Forwarding Emails to Superiors

Defendant argues that Garcia's instruction to Plaintiff not to forward emails that detailed disagreement up the chain is not an "adverse employment action." *See* Doc. No. 28 at 19.  Plaintiff does not provide, and the Court is unaware of, any authority for the proposition that an instruction by an employee's supervisor not to circumvent that supervisor on work projects constitutes an "adverse employment action."  *See Burlington N. & Santa Fe Ry.*, 548 U.S. at 68–69 (stating that, in the Title VII retaliation context, an "adverse employment action" is one that is "materially adverse" and not a "trivial harm[]").  Accordingly, Plaintiff's retaliation claim fails as a matter of law as to the allegation regarding Garcia's instruction to Plaintiff not to forward emails to superiors.

### d.   Summary

In sum, as to Plaintiff's retaliation theories regarding restructuring, communication outside his code, and new advanced technology initiatives, Plaintiff has not produced sufficient evidence that supports his assertion that Defendant's race-neutral justifications for these actions were pretextual.  As to Plaintiff's retaliation theory regarding forwarding emails to superiors, Plaintiff fails to establish a *prima facie* case.  Accordingly, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.  In particular, the Court **GRANTS** summary

1    judgment in Defendant's favor as to Plaintiff's retaliation claim.  The Court **DENIES**

2    Defendant's motion as to Plaintiff's race discrimination claim.  As Plaintiff's race

3    discrimination claim must proceed to trial, the Court will issue a scheduling order setting

4    forth all relevant pretrial deadlines and hearings in due course.

5        **IT IS SO ORDERED**.

6    Dated:  June 16, 2022

7

8                                HON. MICHAEL M. ANELLO

9                                United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28